STATE OF NEBRASKA, APPELLEE, V.
MARVIN WALKER LOVETTE, APPELLANT.
733 N.W.2d 567

Filed February 20, 2007.    No. A-06-281.

This opinion has been ordered permanently published by order
of the Court of Appeals dated April 6, 2007.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

INBODY, Chief Judge, and SIEVERS and MOORE, Judges.

MOORE, Judge.

## I. INTRODUCTION

Following a jury trial in the district court for Hall County, Marvin Walker Lovette was convicted of three counts of first degree sexual assault on a child and one count of child abuse. The district court sentenced Lovette to consecutive terms of imprisonment of 15 to 20 years on each of the sexual assault convictions and a term of imprisonment, also consecutive, of 1 to 2 years on the child abuse conviction. Lovette appeals from his convictions and sentences, assigning as error the court's granting of motions for protective orders, the admission of certain testimony at the hearings on the motions for protective orders, and the admission of certain evidence and the exclusion of other evidence at trial. For the reasons that follow, we affirm Lovette's convictions and sentences.

## II. BACKGROUND

### 1. CIRCUMSTANCES OF CRIMES

Lovette, born July 30, 1946, was 58 years old at the time of or shortly after the charged offenses. The victim, S.S., born November 15, 1990, was 13 years old at the time of the charged offenses. S.S. met Lovette through an Internet "chat room" prior to the summer of 2004. Lovette did not initially provide his real name to S.S., represented his age as being between 19 and 21, and sent S.S. a picture, which S.S. testified appeared to show a person 19 or 20 years old. S.S. initially represented her age to Lovette as 16 or 17. Lovette and S.S. continued "chatting" over the Internet for several months and also spoke directly by telephone. S.S. testified that she and Lovette spoke by telephone nearly every day, sometimes for hours at a time. S.S. provided Lovette her real name and address and sent Lovette photographs of herself at Lovette's request. S.S. eventually told Lovette her real age. Over the telephone, Lovette told S.S. that he was 41 years old but eventually told her his real age. Lovette sent S.S. another photograph of himself, which photograph purportedly showed Lovette at his then-current age.

Lovette and S.S.' telephone conversations included discussions of sex. S.S. testified that Lovette requested her to engage in sexual activities while they talked on the telephone (phone sex). S.S. testified that this included her penetrating her vagina with her own fingers at Lovette's request. Lovette taped the phone sex conversations between himself and S.S., and these audiotapes were played for the jury at trial and admitted into evidence over Lovette's objections.

S.S. testified that Lovette brought up the idea of meeting in person. S.S. testified as to her understanding that upon meeting, "[Lovette] would be giving me things and we'd have sex." The first meeting between Lovette and S.S. occurred late on a weekend night in the summer of 2004. S.S. testified that she met Lovette on a road a distance from her house. Lovette then drove to a field and asked S.S. to perform oral sex on him, and S.S. did so. S.S. testified that this involved placing Lovette's penis in her mouth. Lovette then drove S.S. to a hotel. Lovette and S.S. entered a hotel room where Lovette had sexual intercourse

with S.S. S.S. testified that this involved Lovette's penetrating her vagina with his penis. S.S. then returned home.

Lovette later asked S.S. to send provocative pictures of herself wearing clothing described by Lovette. S.S. had a female friend take photographs of S.S. wearing the clothing as requested by Lovette. Lovette provided S.S. with the camera used to take the photographs. S.S. had the pictures developed and sent to Lovette.

Lovette's next meeting with S.S. occurred 2 to 3 months after the first meeting. S.S. testified that Lovette called her to make plans for the meeting, which plans were to "have sex and to meet in person again and to — he talked about having wedding proposals that he had." S.S. testified that these proposals were "to say to each other to be kind of like partly married." For the second meeting, S.S. again left her house and met Lovette down the road a short way from her house. Lovette again drove S.S. to a hotel where they "had sex again," which S.S. again described as penetration of her vagina by Lovette's penis. S.S. put on a ring that Lovette had given her during their first meeting, and they read "wedding vows" to one another. S.S. testified that these vows were "words. They had—one had his name on it, and one had my name on it, and it had a date and signature line at the bottom." S.S. signed and dated the wedding vow documents given to her by Lovette. Lovette then drove S.S. back home, at which time S.S.' mother caught S.S. trying to sneak back into her house. At the time, S.S. was carrying gifts given to her by Lovette, including a marijuana joint, a 12-pack of beer, cigarettes, a bottle of whiskey, an "Elmo" doll, two sweaters, two bags of candy, and a candle.

After the second meeting, S.S.' mother took away S.S.' telephone and computer, but S.S. used her mother's telephone to continue talking to Lovette. During those conversations, a third meeting was arranged. S.S. testified that Lovette's plan for the third meeting involved S.S.' putting sleep medication in her mother's food. Lovette told S.S. that he would drop off the sleep medication in her driveway. The sleep medication dropped off by Lovette was retrieved by S.S.' mother, and the present proceedings were initiated.

## 2. Charges Filed

The State filed an information on May 3, 2005, and an amended information on September 26. In the operative information, the State charged Lovette with three counts of first degree sexual assault on a child in violation of Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1995), a Class II felony. The State also charged Lovette with one count of child abuse in violation of Neb. Rev. Stat. § 28-707(1)(d) (Cum. Supp. 2006), a Class IIIA felony. Specifically, the State alleged in counts I and II of the information that on July 24 or 25, 2004, Lovette, being a person of 19 years of age or older, subjected S.S., a person of less than 16 years of age, to sexual penetration. In count III, the State alleged that Lovette again subjected S.S. to sexual penetration on September 5. In count IV of the information, the State alleged that on or between April 1, 2004, and January 31, 2005, Lovette knowingly and intentionally caused or permitted S.S. to be placed in a situation to be sexually exploited by intentionally encouraging S.S. to engage in debauchery.

## 3. Pretrial Proceedings

On May 26 and November 22, 2005, the State filed motions for protective orders directing Lovette's attorney and employees of the attorney's office to refrain from providing copies or permanent possession of materials, including certain audiotapes, Internet "chat" transcripts, and photographs seized from Lovette's residence, to Lovette or anyone else. The State's motions were both granted by the district court, and we set forth further details concerning the hearings on those motions and the court's rulings in the analysis section below.

## 4. Trial

A jury trial was held in this case on January 23, 30, and 31 and February 1, 2006. Testimony was presented from witnesses, including S.S., Lovette, and various police officers involved in investigating these crimes. Items admitted into evidence included audiotapes of phone sex conversations between S.S. and Lovette, which audiotapes were played for the jury, photographs of S.S. and typewritten "wedding vows" signed by S.S. recovered from Lovette's home, Lovette's telephone bill showing numerous calls to S.S., various items given by Lovette

to S.S., and receipts for Lovette's stays in hotels in Nebraska on July 24 and 25 and September 5, 2004. Lovette denied having sex with S.S., but he admitted to having computer "chats" and telephone calls with S.S. beginning in approximately March 2004. Lovette testified that he met S.S. in person on only one occasion at a discount store a week before his July birthday. Lovette's explanation for his trips from Colorado to Nebraska was that he was looking for places to live that were cheaper. Lovette's explanation for the phone sex conversations was that he believed at the time that S.S. was "actually 17 turning 18" and that S.S. "likes it when a man talks dirty, nasty, and filthy to her."

### 5. VERDICTS AND SENTENCING

On February 1, 2006, the jury returned verdicts of guilty on all counts, which verdicts were accepted by the district court. A presentence investigation report was ordered. On March 7, the court sentenced Lovette to terms of imprisonment of 15 to 20 years on each of the sexual assault convictions and a term of imprisonment of 1 to 2 years on the child abuse conviction. All sentences were ordered to be served consecutively. Lovette subsequently perfected his appeal to this court.

### III. ASSIGNMENTS OF ERROR

Lovette asserts that the district court erred in (1) allowing certain testimony at the hearings on the State's motions for protective orders, (2) granting both of the State's motions for protective orders, (3) making the following evidentiary rulings at trial: (a) admitting exhibits 80, 81, and 105 (phone sex audiotapes) into evidence and playing exhibits 80 and 105 for the jury, (b) admitting exhibit 89 (telephone bill), (c) admitting exhibit 86 (envelope with notes), and (d) excluding exhibit 106 (juvenile court documents).

### IV. STANDARD OF REVIEW

Discovery in a criminal case is, in the absence of a constitutional requirement, controlled by either a statute or court rule. *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992). Unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of the trial court,

whose ruling will be upheld on appeal unless the trial court has abused its discretion in the discovery ruling. *State v. Phelps, supra.*

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *State v. Stark*, 272 Neb. 89, 718 N.W.2d 509 (2006). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *State v. Stark, supra.* The exercise of judicial discretion is implicit in determinations of relevancy, and a trial court's decision regarding it will not be reversed absent an abuse of discretion. *Id.*

## V. ANALYSIS

### 1. MOTIONS FOR PROTECTIVE ORDERS

Lovette asserts that the district court erred in allowing certain testimony at the hearings on the State's motions for protective orders and in granting both of those motions.

### (a) Hearings on Protective Orders

The district court heard the State's motions on June 1 and December 7, 2005. Similar evidence and arguments were presented at both hearings. The State presented evidence that, if called to testify, certain witnesses would testify about photographs of victims or other sensitive information which had been seized by correctional officers from incarcerated individuals represented by the office of Lovette's attorney some time after the trials of those incarcerated individuals and about one case in which the incarcerated individual had been providing sensitive information to other inmates.

### (b) District Court's Rulings

The district court entered an order on June 13, 2005, ruling on the State's first motion for protective order. The court stated that the clear and concise purpose of the criminal discovery statutes of Nebraska, particularly Neb. Rev. Stat. § 29-1912 (Reissue 1995), is to provide the defendant, through discovery, with certain materials which may be in the possession of the

government and which may be material to the preparation of the defense. The court stated that the purpose of § 29-1912 was solely for providing materials which the defense deemed necessary to inspect and copy for preparing for hearings and ultimately trial on the pending charges. The court found that the statute specifically excludes a request if the request is for purposes of harassing, coercing, or possibly placing someone in a situation of bodily harm. The court reviewed the evidence showing that discovery materials given to defendants by Lovette's counsel were still in the possession of those defendants following trial and, in light of the items of evidence addressed in the State's motion, determined that there was a reasonable possibility that specific protections provided by § 29-1912 might not be taken into consideration by defense counsel. The court noted that the State was not requesting that the court deny access to the evidence to Lovette's counsel for trial preparation, but was seeking only a protective order, which request the court found not to be unreasonable. The court observed that the items at issue could be produced to Lovette's counsel for trial preparation without providing unfettered access to the evidence or copies thereof to anyone other than Lovette's counsel. The court then ordered:

> [P]ursuant to § 29-1915 at a date, time and place as stipulated by counsel the [State] shall turn over to defense counsel those items of evidence received pursuant to this Motion. If counsel cannot agree upon a date, time and place and then contact the Court and the Court will order specifics. Upon turning over the items aforementioned defense counsel may make such inspection and copies or photographs of the items as may be necessary in preparation of the defense but shall not surrender any of the items or copies thereof to any person or persons without order of this Court. The term surrender refers to any of the items of evidence being left with any person or persons other than [Lovette's counsel's] office employees and attorneys. This Order shall govern [Lovette's counsel], and all attorneys and employees of that office in Hall County, Nebraska.

The court entered a similar order on December 8, 2005, with regard to the items at issue in the State's second motion for protective order.

(c) Terms and Conditions of Court's Order Were Just

Two statutory provisions are relevant to our analysis of Lovette's first two assignments of error: § 29-1912 and Neb. Rev. Stat. § 29-1915 (Reissue 1995). Section 29-1912 provides in relevant part:

(1) When a defendant is charged with a felony . . . he or she may request the court where the case is to be tried, at any time after the filing of the indictment, information, or complaint to order the prosecuting attorney to permit the defendant to inspect and copy or photograph:

. . . .

(f) Documents, papers, books, accounts, letters, photographs, objects, or other tangible things of whatsoever kind or nature which could be used as evidence by the prosecuting authority.

(2) The court may issue such an order pursuant to the provisions of this section. In the exercise of its judicial discretion the court shall consider among other things whether:

(a) The request is material to the preparation of the defense;

(b) The request is not made primarily for the purpose of harassing the prosecution or its witnesses;

(c) The request, if granted, would not unreasonably delay the trial of the offense and an earlier request by the defendant could not have reasonably been made;

(d) There is no substantial likelihood that the request, if granted, would preclude a just determination of the issues at the trial of the offense; or

(e) The request, if granted, would not result in the possibility of bodily harm to, or coercion of, witnesses.

(3) Whenever the court refuses to grant an order pursuant to the provisions of this section, it shall render its findings in writing together with the facts upon which the findings are based.

(4) Whenever the prosecuting attorney believes that the granting of an order under the provisions of this section will result in the possibility of bodily harm to witnesses or that witnesses will be coerced, the court may permit him

or her to make such a showing in the form of a written statement to be inspected by the court alone. The statement shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal by the defendant.

Section 29-1915 provides, "An order issued pursuant to the provisions of sections 29-1912 to 29-1921 shall specify the time, place, and manner of making the inspections and of making copies or photographs and may prescribe such terms and conditions as are just."

Lovette argues that it was error for the district court to receive evidence at the hearings on the State's motions about the actions of others besides Lovette, in other words, about other inmates who had possession of discovery materials produced in other cases. The materials in question from the other cases consisted of an alleged sexual assault victim's medical records, vaginal photographs from a sexual assault medical examination, photographs of an assault victim, and documents containing personal information of corrections officers that an inmate had been providing to other inmates. Lovette's counsel made relevancy objections to the offer of this evidence at the hearings on the State's motions for protective orders. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Rev. Stat. § 27-401 (Reissue 1995).

The discovery materials at issue in the present case contained sexual content involving minors; the items included photographs of S.S. and of other minor females, some in provocative poses, and the audiotapes of Lovette's phone sex conversations with S.S. The evidence that sensitive discovery items in other cases had been provided to inmates by Lovette's counsel or those in his office and were still in the possession of those inmates after their trials were over is relevant to the question of whether such a result is probable in the present case. Lovette's unrestricted access to the items at issue does not seem appropriate, given the nature of the items and the charges against Lovette. The district court noted that § 29-1912 excludes requests if they are for the purpose of harassing, coercing, or

possibly placing someone in a situation of bodily harm and found, based on the evidence before it, a reasonable possibility that the specific protections provided by § 29-1912 might not be taken into consideration by Lovette's counsel. We cannot say that the district court abused its discretion in making this determination or in entering the orders of June 13 and December 8, 2005. Both orders provided Lovette's counsel and his office full access to the discovery materials at issue for purposes of trial preparation. The orders did not prevent Lovette from having access to the discovery materials in his counsel's presence, and there is no allegation that the orders prevented Lovette from preparing his defense. The terms and conditions of the discovery orders entered by the district court were just, given the facts and circumstances of this particular case. Lovette's assignments of error with regard to the protective orders entered and the evidence received at the hearings on the State's motions for protective orders are without merit.

## 2. EVIDENTIARY RULINGS

Lovette asserts that the district court erred in making certain evidentiary rulings at trial.

### (a) Playing and Admission of Phone Sex Audiotapes

Lovette asserts that the district court erred in admitting exhibits 80, 81, and 105 into evidence and in playing exhibits 80 and 105 for the jury after their reception into evidence. Exhibits 80 and 81 are the audiotapes of Lovette's phone sex conversations with S.S., and exhibit 105 is a redacted version of exhibit 81. The audiotapes played for the jury were over 2 hours in length. Lovette objected on the basis of evidence rules and foundation, which objections were overruled. See Neb. Rev. Stat. §§ 27-401 through 27-404 (Reissue 1995). The district court found that this evidence went directly to count IV of the information, the child abuse charge. The court found that the audiotapes were "not evidence of other wrongs or acts or crimes to prove the character of the defendant, to show that he acted in conformity therewith. However, it's evidence of the relationship in this series of events charged between the alleged victim and the defendant." The court's instruction to the jury on the material elements of child abuse included instruction that "Lovette

caused or permitted the minor child S.S. to be placed in a situation to be sexually exploited by allowing, encouraging, or forcing such minor child to solicit for or engage in debauchery." Lovette does not assign any error on appeal to the jury instructions that were given.

In his brief on appeal, Lovette argues, based only on § 27-403, that the audiotapes were cumulative evidence and that receiving the audiotapes into evidence and playing them for the jury was unfairly prejudicial in that it unfairly emphasized for the jury the phone sex that occurred. Section 27-403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

It is true that S.S. testified that phone sex conversations occurred. Lovette also confirmed the occurrence of these conversations during his own testimony. Lovette, however, attempted to explain the purpose of the conversations by stating that S.S. liked it "when a man talks dirty, nasty, and filthy to her." Upon cross-examination, Lovette admitted that he heard the audiotapes as they were played in court, agreed that they were "[p]retty much" accurate, that the voices on the audiotapes were those of Lovette and S.S., and that on the audiotapes, Lovette encouraged S.S. to masturbate and to use a bottle to masturbate. Lovette attempted to attack S.S.' credibility throughout the trial and, in his own testimony, presented versions of certain events that differed from those presented by S.S. By listening to the audiotapes, the jury could more accurately judge which version of events was most credible. We cannot say that the district court abused its discretion in admitting the audiotapes into evidence or in allowing them to be played for the jury. Even if the admission and playing of the audiotapes was in error, any such error was harmless. Erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact. *State v. Anderson*, 269 Neb. 365, 693 N.W.2d 267 (2005). The admission of the audiotapes into evidence was directed toward the charges found in count IV of

the information. The record contains sufficient properly admitted evidence to support the jury's finding of guilt as to count IV even without the admission of the audiotapes into evidence. Lovette's assignment of error is without merit.

### (b) Admission of Lovette's Telephone Bill

Lovette asserts that the district court erred in admitting exhibit 89, his telephone bill, into evidence at trial. Exhibit 89 purports to be Lovette's telephone bill for calls made in November and December 2004 and shows numerous long-distance telephone calls to S.S.' residence. Lovette objected to the admission of exhibit 89 on the grounds of foundation and hearsay, which objections were overruled. On appeal, Lovette argues only that the bill is inadmissible hearsay. As with Lovette's previous assignment of error, any possible error in the admission of exhibit 89 was harmless.

In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *State v. Freeman*, 267 Neb. 737, 677 N.W.2d 164 (2004). Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *Id.*

There was testimony in this case from both Lovette and S.S. about telephone calls between them and the frequency with which those telephone calls occurred. The occurrence of such telephone calls was also confirmed by the audiotapes of the phone sex conversations. Assuming, without deciding, that the admission of the telephone bill into evidence was erroneous, the actual guilty verdicts rendered in the questioned trial were surely unattributable to any such error. Lovette's assignment of error is without merit.

### (c) Admission of Envelope With Handwritten Notes

Lovette asserts that the district court erred in admitting at trial exhibit 86, an envelope recovered from Lovette's home

containing various handwritten notes. At trial, Lovette's foundation and relevance objections to the admission of exhibit 86 were overruled. On appeal, Lovette argues that exhibit 86 was not relevant, stating, "What the handwritten note proves (probative value) remains a mystery." Brief for appellant at 16. The notations on exhibit 86 include the telephone number for one of S.S.' friends, which number is identified elsewhere in the record. S.S. testified that Lovette had the number of S.S.' friend and would sometimes call S.S. at her friend's home. We agree that the notations as a whole on exhibit 86 do not have a high degree of relevancy to the issues at trial; however, any error by the district court in admitting exhibit 86, which has some minimal degree of relevancy to the issues at trial, was harmless. See, *State v. Anderson, supra; State v. Freeman, supra.* Lovette's assignment of error is without merit.

### (d) Exclusion of Juvenile Court Records

Lovette asserts that the district court erred in excluding exhibit 106, S.S.' juvenile court records, from evidence at trial. Exhibit 106 consists of 11 pages. The first page is the county judge's order, entered on September 19, 2005, releasing S.S. from probation after the term of her probation had expired. The second page is the senior probation officer's application for early termination of probation because of S.S.' successful completion of the terms and conditions of her probation. The remainder of the exhibit shows that S.S. was adjudicated in January 2005 as an uncontrolled juvenile after she threatened her mother in a menacing manner, which allegations were admitted by S.S. The exhibit also shows that in February 2005, S.S. was placed under an order of juvenile probation with standard conditions of probation and the additional requirement of family counseling.

When exhibit 106 was offered into evidence by Lovette, the State objected that it was cumulative, lacked foundation, and also objected on the basis of § 27-404. The district court sustained the State's objections. Immediately prior to Lovette's offer of exhibit 106, proceedings were held outside the presence of the jury, during which the district court indicated, "I don't think it adds anything. It's cumulative, lacks foundation,

and it just restates what's in evidence already. I don't see here anything that's contradictory or disputes or is inconsistent with what's been presented to the jury."

We agree with the district court's determination in this regard. During the cross-examination of S.S., Lovette's counsel questioned S.S. about the juvenile charges that were filed against her, the timing of the juvenile petition in relation to the statements S.S. gave police in the present case, and S.S.' being placed on juvenile probation by the county court, all of which S.S. acknowledged occurred. On redirect examination, S.S. explained that the juvenile charges stemmed from a fight with her mother. S.S. explained that although it was not a physical fight, she did tell her mother that "I was going to hit her if she hit me." S.S. explained that her mother then called the police and S.S. was taken to a youth facility, where she spent the night before going to court. S.S. testified further that she admitted the charges, was allowed to go home with her mother, and had lived with her mother since then. S.S. testified that when she was taken to the youth facility, the police made no promises or threats with regard to seeking information about her relationship with Lovette. S.S. testified that she successfully completed her probation and that her probation officer made no threats with regard to S.S.' telling officers about her relationship with Lovette. During his cross-examination of S.S., Lovette had the opportunity to examine S.S. concerning the juvenile court proceedings and whether those proceedings had any effect on her interactions with the officers investigating the present case. S.S. testified that she was involved in juvenile court proceedings, described the incident that led to those proceedings, and stated that she was placed on probation and that she successfully completed that probation. There is nothing contained in exhibit 106 that would add to or explain further the testimony given by S.S. in this regard. The district court did not abuse its discretion in refusing to admit exhibit 106 into evidence. Lovette's assignment of error is without merit.

## VI. CONCLUSION

The district court did not err in receiving certain evidence at the hearings on the State's motions for protective orders or in

granting those motions. Likewise, the court did not err in making the evidentiary rulings complained of by Lovette. Accordingly, we affirm Lovette's convictions and sentences.

AFFIRMED.